UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.09-82363-Civ-Hurley/Hopkins

NUKOTE INTERNATIONAL, INC.,

        Plaintiff,

vs.

OFFICE DEPOT, INC.,

        Defendant.

_____/



FILED by ___TM___ D.C.

**APR 1 1 2011**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT AND RECOMMENDATION AS TO DEFENDANT'S MOTION TO DETERMINE ENTITLEMENT FOR ATTORNEY'S FEES (DE 72)

**THIS CAUSE** has come before this Court upon an Order referring Defendant's Motion to Determine Entitlement for Attorney's Fees to the undersigned for a Report and Recommendation. (DEs 72, 74). This Court has before it Defendant's Motion and supporting Memorandum, Plaintiff's Response, Defendant's Reply, and additional memoranda of law submitted by Plaintiff and Defendant. (DEs 72, 73, 77, 79, 94, 95). The matter is now ripe for review. For the reasons that follow, this Court **RECOMMENDS** that the District Court **AWARD** Defendant attorney's fees in the amount of four hundred seventeen thousand, one hundred ninety-four dollars and twenty cents ($417,194.20). (DE 72).

### BACKGROUND

Plaintiff, Nukote International, Inc., ("Plaintiff"), and Defendant, Office Depot, Inc., ("Defendant") were parties to an agreement pursuant to which Plaintiff was to supply Defendant with office products for use with printers, copiers, and fax machines. (DE 30, pgs. 1-2). After encountering financial difficulties, which Plaintiff alleges were due to Defendant's actions, Plaintiff filed, in June of 2009, a voluntary Chapter 11 petition for bankruptcy in the Bankruptcy

Court for the Middle District of Tennessee. (DE 30, pg. 4; DE 77, pg. 2). After the business

relationship of Plaintiff and Defendant deteriorated further, Plaintiff filed adversary proceedings

against Defendant in the Bankruptcy Court in September of 2009. (DE 30, pg. 4; DE 73, pg. 2;

DE 77, pg. 2).[1] On October 2, 2009, Defendant filed in the District Court for the Middle District

of Tennessee a Motion to Withdraw the Reference, Transfer Venue, and Extend the Time to

Respond to the Complaint, wherein Defendant requested to transfer the adversary proceedings to

the United States District Court for the Southern District of Florida. (DE 30, pgs. 1, 4).

Defendant's motion was granted on November 16, 2009, and the adversary proceedings were

transferred to the Southern District of Florida on December 1 and 2, 2009. (DEs 30, 31, 32, 33).

Four (4) days prior to the transfer of the adversary proceedings to the Southern District of

Florida, on November 12, 2009, the Bankruptcy Court entered a First Amended Joint Plan of

Reorganization for Nukote, pursuant to Chapter 11 ("the Plan"). (DE 77, exh. A, pg. 2). On or

about December 15, 2009, the Bankruptcy Court entered an Order confirming and modifying the

First Amended Joint Plan of Reorganization for Nukote, and the Plan became effective on

February 17, 2010. (DE 77, exh. A, pgs. 52-60, and exh. C).

In February of 2010, Defendant filed a Motion to Dismiss the instant case in this District,

arguing that Plaintiff failed to comply with a mediation provision contained in the parties' 2006

Vendor Agreement. (DE 52, pgs. 2-3). The day before the parties were to appear for a hearing

on Defendant's Motion, Plaintiff filed a Notice of Voluntary Dismissal pursuant to Fed. R. Civ.

P. Rule 41(a)(1). (DEs 69, 70). As a result, the District Court entered an Order of Close-Out and

---

[1] Plaintiff's Complaint in the adversary proceeding asserted nine causes of action, including Florida state law breach of contract claims and bankruptcy claims. (DE 30, pg. 4).

dismissed the case without prejudice to refile. (DEs 70, 71). Defendant's Motion to Determine

Entitlement to Attorney's Fees followed thereafter. (DEs 72, 73).

On September 30, 2010, this Court recommended that Defendant's Motion be denied.

(DE 82). However, the District Court sustained Defendant's objections and remanded the matter

for a determination of the amount of attorney's fees to be awarded to Defendant. (DE 89, pgs. 4-

5).

## DISCUSSION

Defendant seeks attorney's fees in the amount of four hundred fifty thousand, two

hundred ninety-four dollars and sixty-five cents ($450,294.65), plus the amount incurred in

connection with its Motion to Determine Entitlement. (DE 72, pg. 1[2]). Plaintiff argues, *inter*

*alia*, that (1) Defendant is not entitled to attorney's fees for work performed prior to the date that

the Plan of Reorganization became effective on February 17, 2010; (2) Defendant is only entitled

to recover attorney's fees incurred after the date of the Plan; (3) Defendant is not entitled to

recover any attorney's fees related to discovery because no discovery was conducted in this case;

and, (4) Defendant may not recover attorney's fees for a hearing on the motion to dismiss which

never occurred, or for events that occurred subsequent to dismissal of the action. (DE 77, pgs. 9-

10; DE 94, pgs. 1-6). In the alternative, Plaintiff contends that Defendant's claim for attorney's

fees should be remanded to the Bankruptcy Court. (DE 94, pg. 4).

In response, Defendant argues *inter alia* that (1) Plaintiff's bankruptcy argument

---

[2] Defendant originally stated that it would also seek to recover attorney's fees in connection with the Motion to Determine Entitlement. (DE 72, pg. 1). However, in its most recent pleading, Defendant stated that it would only do so in the event that the Court agreed with Plaintiff's contention that Defendant is not entitled to fees incurred prior to the effective date of the Bankruptcy Court's Reorganization Plan. (DE 95, pg. 11).

3

constitutes an improper attempt to relitigate the issue of Defendant's entitlement to attorney's fees; (2) even if the Court considered the merits of Plaintiff's bankruptcy argument, such argument would fail; (3) the matter should not be remanded to the Bankruptcy Court; and, (4) Defendant should be compensated for time spent on discovery and the motion to dismiss.  (DE 95, pgs. 1-17).

## I.  Whether Defendant may Recover Attorney's Fees for work Performed Prior to the Effective Date of the Plan

Plaintiff contends that Defendant may not recover attorney's fees for work performed prior to February 17, 2010, the effective date of the Plan, because any debt that arose prior to the effective date of the Plan is discharged pursuant to 11 U.S.C. § 1141(d)(1).  (DE 77, pgs. 9-10; DE 94, pgs. 1-7) (*citations omitted*).  Defendant argues that Plaintiff's bankruptcy argument should not be considered because the District Court already determined that Defendant is entitled to fees, and because such argument is procedurally improper at this stage.  (DE 95, pgs. 3-6, 9).  This Court agrees with Defendant.

The Eleventh Circuit has observed that parties are generally precluded from raising arguments in later stages of litigation where they could have, but failed to, raise such arguments earlier.  For example, in the context of motions for reconsideration, the Eleventh Circuit stated that motions to reconsider cannot be used to "relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgement." *Wilchombe v. Teevee Toons, Inc.*, 555 F.3d 949, 957-958 (11th Cir. 2009) (*citing Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005)).  Such "prohibition includes new arguments that were previously available, but not pressed." *Wilchombe*, 555 F.3d at 957 (*citing Stone v.*

4

*Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998)). To allow parties to raise arguments in violation of this prohibition would constitute a "second bite at the apple." *Wilchombe*, 555 F.3d at 958 (*citing O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir. 1992)).

In another case involving the imposition of sanctions, the Eleventh Circuit referred to the well established rule that issues which were not presented to the District Court should not be considered on appeal. *See Norelus v. Denny's Inc.*, 628 F.3d 1270, 1296 (11th Cir. 2010) (*collecting cases*). The Court also referred to the well settled rule that a legal argument which has not been briefed is deemed abandoned, and its merits should not be considered. *See Norelus*, 628 F.3d at 1297 (*collecting cases*). Generally, arguments not raised are deemed waived. *See Id.* (*quoting Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004)).

The foregoing leads this Court to conclude that Plaintiff's bankruptcy argument should not be considered at this stage. In response to Defendant's Motion to Determine Entitlement to Attorney's Fees, (DE 72), Plaintiff argued generally, but with no citations to any legal authority, that Defendant was only entitled to an award of fees for work performed after February 17, 2010, the effective date of the Plan. (DE 77, pgs. 5, 9-10). When this Court issued its Report and Recommendation, because this Court opined that Florida state law precluded Defendant from recovering attorney's fees, no discussion of the bankruptcy issue was required. (DE 82). When Defendant appealed this Court's Report and Recommendation, and Plaintiff filed its response, Plaintiff declined to raise the bankruptcy argument. (DE 84, pgs. 1-12). As a result, when the District Court issued its Order, the District Court focused on the only issue argued by the parties: the application of state law. (DE 89). The District Court did not reach the bankruptcy issue. (DE 89). Now, after the matter has been remanded for a determination of the amount of fees to

5

award, Plaintiff reasserts the bankruptcy argument again, citing authorities which were never argued previously in any other pleading. (DE 94, pgs. 2-4).

Plaintiff had the opportunity to present its cases in response to Defendant's Motion to Determine Entitlement for Attorney's Fees, and again in response to Defendant's objection, yet, failed to do so. (DEs 72, 77, 83, 84). As a result, it appears that Plaintiff has waived the opportunity to rely on such position. *See Norelus*, 628 F.3d at 1297. Consideration of the bankruptcy argument at this stage of the proceedings would allow Plaintiff a "second bite at the apple." *Wilchombe*, 555 F.3d at 958.

## II.  Remanding the Matter to Bankruptcy Court

Plaintiff next argues that the Court should remand this matter back to the Bankruptcy Court for a determination of the amount. (DE 94, pg. 4). This Court declines to recommend such action.

As noted by Defendant, Plaintiff cites no authority for the proposition that the decision of the United States District Court  for the Middle District of Tennessee to withdraw the reference from Bankruptcy Court should be questioned at this time. (DEs 30, 31, 32, 33; DE 95, pg. 6). Rather, it appears that if the matter were to be remanded to the Bankruptcy Court as requested by Plaintiff, Plaintiff would effectively be given a "second bite at the apple," contrary to *Wilchombe*, 555 F.3d at 958.

This Court now turns its attention to the calculation of Defendant's attorney's fee award.

## III.  Calculation of the Attorney's Fees Award

Defendant seeks attorney's fees in the amount of four hundred fifty thousand, two hundred ninety-four dollars and sixty-five cents ($450,294.65). (DE 72, pg. 1). In support of its

request, Defendant has submitted billing invoices from the firms of Williams & Connolly LLP, Bass Berry & Sims PLC, and Jones, Foster, Johnston & Stubbs, P.A. (DE 72, exhs. 2, 3, 4).[3]

Generally speaking, a reasonable attorney's fee award is "properly calculated by multiplying the number of hours reasonably expended times a reasonable hourly rate." *American Civil Liberties Union v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (*citing Blum v. Stenson*, 465 U.S. 886, 888 (1994)). This "lodestar" may then be adjusted for the results obtained. *See Barnes*, 168 F.3d at 427 (*citing Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)). The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (*quoting Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1999)). The fee applicant bears the burden of establishing the claimed market rate. *See Barnes*, 168 F.3d at 427.

Generally, "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" *Barnes*, 168 F.3d at 437 (*citing Cullens v. Georgia Dep't. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)). "If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Barnes*, 168 F.3d at 437 (holding that the district court erred in awarding New York rates for suit filed in Atlanta without finding that the plaintiffs met its burden of showing that there were no attorneys in Atlanta who were willing and able to handle the claims)

---

[3] Bass Berry & Sims PLC is a Nashville, Tennessee, firm that acted as bankruptcy counsel and Tennessee local counsel to Office Depot. (DE 72, pg. 6). Jones, Foster, Johnston & Stubbs, P.A., acted as Florida local counsel to Office Depot. (DE 72, pg. 7). Williams & Connolly LLP is based in Washington, D.C. (DE 72, pg. 9).

(citing *Brooks v. Georgia State Bd. of Elections*, 997 F.2d 857, 869 (11th Cir. 1993) (upholding

decision to award non-local rates based on the district court's finding that there were no local

attorneys who could have handled the case)).

    With regard to the reasonable hourly rate, our High Court stated in *Norman*,

> . . . Satisfactory evidence at a minimum is more than the affidavit of the attorney
> performing the work . . . It should also be noted that in line with the goal of
> obtaining objectivity, satisfactory evidence necessarily must speak to rates
> actually billed and paid in similar lawsuits. Testimony that a given fee is
> reasonable is therefore unsatisfactory evidence of market rate . . . Evidence of
> rates may be adduced through direct evidence of charges by lawyers under similar
> circumstances or by opinion evidence. The weight to be given to opinion
> evidence of course will be affected by the detail contained in the testimony on
> matters such as similarity of skill, reputation, experience, similarity of case and
> client, and breadth of the sample of which the expert has knowledge.

*Norman*, 836 F.2d at 1299 (*citations omitted*). Nevertheless, the Court also noted that "the

court, either trial or appellate, is itself an expert on the question and may consider its own

knowledge and experience concerning reasonable and proper fees and may form an independent

judgment either with or without the aid of witnesses as to value." *Id.* at 1303.

    The court may also consider any one of the factors[4] enunciated in *Johnson v. Georgia

Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), to determine a reasonable hourly rate. *See

Norman*, 836 F.2d at 1299-1300 ("We still believe that at least some of the *Johnson* factors have

utility in establishing the hourly rate. In evaluating comparability of the market rates being

---

[4] The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the
questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the
attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time
limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the
experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of
the professional relationship with the client; and, (12) awards in similar cases.

attested to, the district court may wish to consider any of the *Johnson* factors to the extent that they suggest that comparables offered may not be relevant to the issues before the court or as they may affect the weight to be given to the comparables being offered the court.")

As to the type of evidence that the fee claimant should produce in support of a fee claim, the Eleventh Circuit has stated,

> The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303. That burden includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." *Id.* (*citations omitted*).

*Barnes,* 168 F.3d at 427. *See also Norman*, 836 F.2d at 1303 (*citing Hensley*, 461 U.S. at 437 n. 12).

In submitting a request for attorney's fees, fee applicants are required to exercise "billing judgment." *Barnes*, 168 F.3d at 428 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). If fee applicants do not exercise billing judgment by excluding "excessive, redundant, or otherwise unnecessary" hours, the court must exercise billing judgment for them. *See Barnes*, 168 F.3d at 428 (*quoting Norman*, 836 F.2d at 1301).

When objections to fee petitions are raised, such objections must be precise and reasonably specific. *See Barnes*, 168 F.3d at 427 (stating that fee opponents are required to be specific and "reasonably precise" with respect to any objections they may have); *Norman*, 836 F.2d at 1301 ("[a]s the district court must be reasonably precise in excluding hours thought to be

9

unreasonable or unnecessary, so should be the objections and proof from fee opponents.") A failure to object is generally deemed fatal. *See Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387, 1389 (11th Cir. 1997) (affirming decision of district court as to the claimed number of hours worked because fee opponents failed to lodge specific objections); *Scelta v. Delicatessan Support Srvcs. Inc.*, 203 F. Supp 2d 1328, 1333 (M.D. Fla. 2002) ("[a] fee opponent's failure to explain exactly which hours he views as unnecessary or duplicative is generally viewed as fatal.") (*citing Gray*, 125 F.3d 1387).

## A. Plaintiff's Objections

With regard to Plaintiff's objections, Plaintiff first argues that any claim for fees related to discovery and e-discovery is unreasonable and excessive because no discovery was undertaken in this matter. (DE 94, pg. 5). However, Defendant contends that it should be compensated for all time billed in relation to discovery in light of Plaintiff's representations in the case. (DE 95, pgs. 12-15).

This Court concludes that Defendant should be compensated for time spent on discovery matters. Notwithstanding the fact that no discovery requests were ever served by any party, Defendant notes that Plaintiff demanded that discovery begin less than one (1) month after the case commenced in 2009. (DE 95, pg. 12). As noted by Defendant, in a hearing before the United States Bankruptcy Court of the Middle District of Tennessee on October 6, 2009, prior to the date that Defendant's Answer was due, Plaintiff indicated that it would promptly commence discovery with the taking of at least ten (10) to twelve (12) depositions. (DE 95, pg. 13). In its Order transferring the case to the Southern District of Florida, the United States District Court for the Middle District of Tennessee stated that the case involved a "massive amount of discovery."

10

(DE 95, pg. 13) (*citing Nukote Int'l, Inc. v. Office Depot, Inc.*, No. 3:09-0921, 2009 WL

3840482, *9 (M.D. Tenn. Nov. 16, 2009)).  Upon transfer to the Southern District of Florida, the

District Court entered a scheduling order containing a summary judgment deadline of September

17, 2010, a discovery cut off of December 6, 2010, and a trial date of January, 2011.  (DE 48).

According to Defendant, Plaintiff's representations regarding the volume of discovery and the

District Court's scheduling order prompted it to obtain professional assistance for the gathering

possible electronic discovery and for preparing to conduct its own discovery.  (DE 95, pgs. 12-

13).  By the time that Plaintiff dismissed the case, the case had been pending for more than seven

months, and trial was less than one (1) year away.  (DE 95, pg. 12).  Finally, Defendant states

that it is not seeking to be compensated for any discovery work after Plaintiff's counsel first

indicated that the case might be voluntarily dismissed.  (DE 95, pg. 15).  In light of the foregoing,

this Court concludes that Defendant reasonably spent time on discovery matters, and that it

should be compensated for such time.

Plaintiff next argues that Defendant should not be compensated for time spent preparing

for the hearing on the Motion to Dismiss because the hearing never occurred.  (DE 94, pg. 6).

Defendant contends that it should be compensated for all time billed for the matter, 36.5 hours,

because even though Defendant received some notice that Plaintiff was considering dismissing

the matter on April 21, 2010, Plaintiff only entered the dismissal on April 27, 2010, a mere one

(1) day before the hearing.  (DE 95, pg. 15).

This Court concludes that Defendant should be compensated for time spent preparing for

the hearing on the motion to dismiss.  Because Plaintiff had not yet entered its dismissal until the

day prior to the hearing, it would be reasonable for counsel to keep working on the matter up

11

until such time.

Finally, Plaintiff argues that Defendant should not be compensated for .80 hours billed on April 29, 2010, for "post dismissal strategy." (DE 94, pg. 6). Defendant has not responded to such objection. (DE 95, pgs. 1-19).

Plaintiff's objection is not persuasive. A review of Defendant's billing records shows that on April 29, 2010, Beth Levene billed .80 hours for a meeting with Paul T. Hourihan to discuss the case and post dismissal strategy. (DE 72, exh, 2, pg. 53). As noted previously, Plaintiff had only entered the dismissal two (2) days earlier, on April 27, 2010. (DE 70). Other billing entries surrounding the date of April 29, 2010, show that at the time, Defendant was commencing work on the motion for attorney's fees, a post dismissal matter. (DE 72, exh. 2, pg. 53). In light of such circumstances, this Court concludes that Defendant should be compensated for the .80 hours billed for the April 29, 2010, meeting.

## B. Reasonable Hourly Rate for Counsel

Having resolved Plaintiff's objections, this Court now turns its attention to the hourly rates of counsel.

### 1. Hourly Rates for Non-Local Counsel

In all, Defendant seeks to recover attorney's fees for work performed by nine (9) attorneys, two (2) paralegals, and two (2) cite checkers. (DE 72, pgs. 3-7). As noted previously, Defendant was represented by the Washington, D.C. firm of Williams & Connolly LLP, the Nashville, Tennessee, firm of Bass Berry & Sims PLC, and the local firm of Jones, Foster, Johnston & Stubbs, P.A. (DE 72, exhs. 2, 3, 4). The non-local attorneys billed at the following

hourly rates:[5]

Daniel Katz ("Katz"): $586.50;

Paul T. Hourihan ("Hourihan"): $467.50;

Beth Levene ("Levene"): $446.25;

C. Bryan Wilson ("Wilson"): $340.00;

Marcus Smith ("Smith"): $224.00;

Paul Jennings ("Jennings"): $405.00;

Gene Humphreys ("Humphreys"): $385.00; and,

Scott P. Tift ("Tift"): $180.00.

(DE 72, pgs. 2-7).

Because Defendant seeks to be compensated for time expended by non-local counsel,

Defendant " . . . must show a lack of attorneys practicing in that place who are willing and able to

handle his claims." *Barnes*, 168 F.3d at 437 (holding that the district court erred in awarding

New York rates for suit filed in Atlanta without finding that the plaintiffs met its burden of

showing that there were no attorneys in Atlanta who were willing and able to handle the claims)

(*citing Brooks*, 997 F.2d at 869 (upholding decision to award non-local rates based on the district

court's finding that there were no local attorneys who could have handled the case)).

The instant case commenced in the United States Bankruptcy Court of the Middle District

of Tennessee, and was transferred to the Southern District of Florida on November 16, 2009.

(DEs 1, 31). Defendant has failed to show that there were no local attorneys who were willing

---

[5] Although the attorneys, paralegals, and cite checkers billed at various rates during different periods of
time, Defendant states that for purposes of the instant motion, it seeks to be compensated for the lowest rates billed.
(DE 72, pgs. 2-7).

and able to handle its claims after the case was transferred to the Southern District of Florida. As a result, this Court concludes that Defendant is not entitled to recover the rates claimed by non-local counsel from Williams & Connolly LLP and Bass Berry & Sims PLC.

Applying the *Johnson* factors to determine a reasonable hourly rate for non-local counsel, this Court makes the following observations.

As to the ninth *Johnson* factor, the experience, reputation, and ability of the attorneys, although this Court is unfamiliar with the reputation of any of the attorneys, and Plaintiff has presented no evidence in that regard, Defendant's Motion shows that all have practiced for a substantial period of time. Katz, a partner at Williams & Connolly LLP, graduated from Duke University School of Law in 1983, and joined the firm in 1984 after clerking for the United States Court of Appeals for the Tenth Circuit. (DE 72, pg. 2). Hourihan, also a partner at Williams & Connolly LLP, graduated from the University of Virginia School of Law in 1995, and joined the firm in 1996. (DE 72, pg. 2). Levene, another partner at Williams & Connolly, LLP, graduated from the University of Chicago Law School in 1996 and joined the firm in 1997 after clerking for the United States Court of Appeals for the Seventh Circuit. (DE 72, pg. 3). Wilson, an associate at Williams & Connolly LLP, joined the firm in 2006 after clerking for the United States District Court for the Southern District of Texas and the United States Court of Appeals for the Fifth Circuit. (DE 72, pg. 4). Smith, an associate at Williams & Connolly LLP, joined the firm in 2009 after graduating from Yale Law School that same year. (DE 72, pg. 4). Jennings, a partner at Bass Berry & Sims PLC, graduated from the University of Tennessee in 1990, specializes in bankruptcy law and is currently the chair of his firm's bankruptcy practice section. (DE 72, pg. 6). Humphreys, a partner at Bass Berry & Sims PLC, specializes in

14

bankruptcy law, and joined the firm after graduating from the University of Kentucky in 1989. (DE 72, pg. 6). Tift, an associate at Bass Berry & Sims PLC, joined the firm after obtaining his law degree from Vanderbilt University in 2008. (DE 72, pg. 6).

Next, as to the first and second *Johnson* factors, the time and labor required, and the novelty and difficulty of the questions, this Court notes that the instant case involved questions of bankruptcy law.[6] Because bankruptcy questions can often be complex, and are often handled by attorneys who specialize in the area, the instant case could have required more time and labor than other civil matters. However, both Defendant's billing records and the docket show that the case was more like an ordinary civil matter than a complex bankruptcy proceeding.

According to Defendant's billing records, counsel from Williams & Connolly LLP only billed time in this case from September 14, 2009, to April 29, 2010, and counsel from Bass Berry & Sims PLC billed time from September 18, 2009, to December 16, 2009. (DE 72, exhs. 2, 3). The docket shows that the case was primarily active from October 2, 2009, until April 27, 2010, the date that Plaintiff filed its voluntary dismissal. (DEs 1-71). As can be seen from such dates, it appears that the instant case was only active for a limited period of time.

Moreover, the docket shows that Defendant filed relatively few substantive pleadings prior to Plaintiff's voluntary dismissal.[7]   Most of the pleadings filed by Defendant in the case were non-substantive, such as motions to appear pro hac vice, motions for limited appearance of

---

[6] The docket shows that the first portion of the case was litigated in the United States Bankruptcy Court for the Middle District of Tennessee. (DEs 1-33). Even after the case transferred out of the Bankruptcy Court, bankruptcy issues arose in Defendant's Motion to Dismiss, and remain an issue in Defendant's Motion to Determine Entitlement for Attorney's Fees. (DEs 52, 56, 77, 92).

[7] Defendant's Motion to Determine Entitlement to Attorney's fees followed immediately upon dismissal. (DEs 70, 71, 72).

counsel, a motion for leave to file a reply, an inquiry into the status of the case, a status report, notices of filing, and a motion for hearing. (DEs 13-16, 25, 28, 38, 39, 40, 41, 42, 52, 56, 57, 58). Although the motion to withdraw the bankruptcy reference and motion to dismiss were more substantive than the aforementioned motions, neither motion was premised on complex bankruptcy law. Rather, Defendant's contentions in the five (5) paragraph motion to withdraw the bankruptcy reference were that the bankruptcy issue was not a "core" matter, judicial economy would be best served by the withdrawal and transfer of the case, and that the parties' agreement contained a forum selection clause. (DE 1, pgs. 1-3). Similarly, the basis for the six (6) page motion to dismiss was that Plaintiff failed to comply with a a provision in the parties' 2006 Vendor Agreement. (DE 56, exh. A).

In short, notwithstanding the fact that the instant case originated as a bankruptcy proceeding, after considering the length of time that the case was litigated prior to Plaintiff's voluntary dismissal, as well as the types of pleadings that were filed, it appears that the case was more of a routine civil matter than a complex bankruptcy matter.

In light of the above discussion of the *Johnson* factors, Plaintiff's lack of evidence as to the reputation of the attorneys, and this Court's own expertise, this Court finds that some of the non-local attorney's hourly rates should be slightly reduced. *See Godoy v. New River Pizza, Inc.*, 565 F. Supp 2d 1345, 1347-1348 (S.D. Fla. 2008) (reducing paralegal rate by 50% based on the lack of evidence in support of the claimed rate, the nature and difficulty of the law, and the Court's expertise). This Court **RECOMMENDS** that non-local counsel be compensated at the following hourly rates:

Daniel Katz (partner, 27 years practicing): $500.00 (rate claimed $586.50);

Paul T. Hourihan (partner, 15 years practicing): $400.00 (rate claimed $467.50);

Beth Levene (partner, 14 years practicing): $400.00 (rate claimed $446.25);

C. Bryan Wilson (5 years practicing): $300.00 (claimed rate $340.00);

Marcus Smith (2 years practicing): $224.00 (same as claimed rate);

Paul Jennings (partner, 21 years practicing): $405.00 (same as claimed rate);

Gene Humphreys (partner, 22 years practicing): $385.00 (same as claimed rate); and,

Scott P. Tift (3 years practicing): $180.00 (same as claimed rate).

### 2. Hourly rate for Local Counsel

Defendant seeks to have its local counsel, Joanne O'Connor ("O'Connor") compensated at the hourly rate of $300.00. (DE 72, pg. 5). The only information provided by Defendant is that O'Connor is a partner at Jones, Foster, Johnston & Stubbs, P.A., who graduated from Tulane University School of Law in 1999. (DE 72, pg. 7).

Application of the *Johnson* factors leads this Court to conclude that the requested rate is reasonable. As to the ninth factor, although this Court is unfamiliar with O'Connor's reputation, she has been practicing for a substantial period of time, twelve (12) years. As such, and in light of this Court's experience, the requested rate appears to be within the acceptable range for this District. This Court therefore **RECOMMENDS** that the District Court compensate O'Connor at the rate of $300.00 per hour.

### C. Reasonable Number of Hours for Counsel

Apart from the objections previously addressed, Plaintiff has not objected to any other billing entries for counsel. (DEs 77, 94). As a result, this Court **RECOMMENDS** that the

17

District Court compensate Defendant for all other hours billed by counsel.[8] *See Gray*, 125 F.3d at 1389 (affirming decision of district court as to the claimed number of hours because fee opponents failed to lodge specific objections); *Scelta*, 203 F. Supp. 2d at 1333 (accepting all billing entries not properly objected to).  (DE 72).

### D.  Attorney's Fee Awards for Time Spent by Paralegals and Cite Checkers

Defendant's paralegals and cite checkers billed at the following rates: (1) Alissa C. Beaty ("Beaty") billed at a rate of $148.75; (2) Natalie L. Yeager ("Yeager") billed at the rate of $184.50; (3) Olivia J. Evans ("Evans") billed at the rate of $174.25; and, (4) LeAnn Lewis ("Lewis") billed at the rate of $145.00.  (DE 72, pgs. 2-7).

Where the work performed is that normally performed by an attorney, paralegal time may be included as part of an attorney's fee award. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) (holding that the district court did not err, as part of awarding attorney's fees pursuant to 42 U.S.C. § 1988, by compensating the plaintiffs for the work of law clerks and paralegals at market rates, rather than at their cost to the attorney); *Jean v. Nelson*, 863 F.2d 759, 778-780 (11th Cir. 1988) (holding that time spent by paralegals and law clerks could be reimbursed under the Equal Access to Justice Act to the extent that the work was normally done by an attorney) (*citing Allen v. United States Steel Corp.*, 665 F.2d 689, 697 (5th Cir. Unit B 1982)).  By permitting attorney's fees to be collected for work done by paralegals, *Jean* encourages economy in litigation. *See Celeste v. Sullivan*, 988 F.2d 1069, 1071 and n.3 (11th Cir. 1992) ("To [deny reimbursement for clerk and paralegal time] would be counterproductive because excluding reimbursement for such work might encourage attorneys to handle entire cases themselves, thereby achieving the same

---

[8] The total number of hours worked by counsel is listed *supra*, at pages 27–28.

results at a higher overall cost.") (*quoting Jean*, 863 F.2d at 778)).  However, where the work is

merely clerical, a request for such fees should be denied. *See Munoz v. Kobi Karp Arch. &*

*Interior*, No. 09-21273-CIV, 2010 WL 2243795, *7 (S.D. Fla. May 13, 2010) (noting that where

a paralegal performs work that would not be performed by an attorney, such work is not

compensable as attorney's fees; declining request for time spent formatting and e-mailing

proposed orders to chambers) (*citing Jean*, 863 F.2d at 778); *Fox v. The Marquis Corp.*, No.

08-81264-CIV, 2010 WL 1010871, *7 (S.D. Fla. Mar. 15, 2010) (noting that secretarial work

such as "gathering materials and copying, mailing, [and] refiling," as well as "organizing files,

copying documents, checking the docket, updating files, checking court dates and delivering

papers" is not compensable) (*quoting Scelta*, 203 F. Supp.2d at 1334); *For Play Limited v. Bow*

*to Stern Maint., Inc.*, No. 05-22002-Civ, 2006 WL 3662339, *7 (S.D. Fla. Nov.6, 2006)); *Adams*

*v. Austal*, Civil Action No. 08-0155-KD-N, 2009 WL 3261955, *3 (S.D. Ala. Oct. 7, 2009)

(noting that work performed by clerical staff should not be compensated because such costs

constitute overhead) (*citing Jean*, 863 F.2d at 778; *Celeste*, 988 F.2d at 1070).[9]

### 1. Deductions for Time Spent on Clerical Tasks

A review of the invoices submitted by Defendant shows that the paralegals and cite

checkers performed some work which would normally be handled by attorneys, such as checking

legal citations in pleadings.  (DE 72, exh,. 2, pg. 8).[10]

---

[9] Plaintiff has not objected to any time specifically billed by paralegals.  (DEs 77, 94).  However, because time spent on clerical tasks is not compensable as attorney's fees, an award of such fees would be improper.  Not only do courts have a duty to exercise billing judgment for applicants who fail to do so, but courts are also not permitted to be generous with the money of others. *See Barnes*, 168 F.3d at 428 (*quoting Norman*, 836 F.2d at 1301).  As the Eleventh Circuit has noted, it is as much the court's duty to avoid awarding excessive fees and expenses as it is to see that an adequate fee is awarded. *See Barnes*, 168 F.3d at 428.

[10] This Court cites to the page number contained in the CM/ECF banner at the top of the page.

However, other entries contained in the billing invoices show that a fair amount of time was spent on tasks which appear to be more clerical in nature.  Such entries include those dated as follows:

(1) October 5, 2009: Beaty billed 1.70 hours ($267.75) for "indexing pleadings;"

(2) November 16, 2009: Beaty billed .70 hours ($110.25) for creating an "incoming document log;"

(3) November 18, 2009: Beaty billed 4.20 hours ($661.50) for "work[ing] on incoming document log;"

(4) February 2, 2010: Beaty billed .20 hours ($34.00) for "updat[ing] pleadings;"

(5) February 3, 2010: Beaty billed .50 hours ($85.00) for "updat[ing] pleadings;"

(6) February 14, 2010: Beaty billed .30 hours ($51.00) for "updat[ing] pleadings;"

(7) February 15, 2010: Beaty billed .30 hours ($51.00) for "updat[ing] pleadings;"

(8) February 16, 2010: Beaty billed .70 hours ($119.00) for "updat[ing] pleadings;"

(9) February 23, 2010: Beaty billed .30 hours ($51.00) for "updat[ing] pleadings;"

(10) February 25, 2010: Beaty billed .10 hours ($17.00) for "updat[ing] pleadings;"

(11) April 1, 2010: Beaty billed .10 hours ($17.00) for "updat[ing] electronic collection of pleadings;"

(12) April 2, 2010: Beaty billed .20 hours ($34.00) for "updat[ing] electronic collection of pleadings;"

(13) April 22, 2010: Beaty billed .10 hours ($17.00) for "updat[ing] electronic collection of pleadings;"

(14) April 26, 2010: Beaty billed .20 hours ($34.00) for "updat[ing] electronic collection

20

of pleadings;"

(15) September 18, 2009: Lewis billed .50 hours ($72.50) for retrieving the "motion to withdraw reference and related documentation;"

(16) September 29, 2009: Lewis billed 2.50 hours ($362.50) for filing and serving a "Motion to Withdraw Reference, Motion for Stay, Expedited Order, Disclosure;"

(17) September 30, 2009: Lewis billed .20 hours ($29.00) for revising e-mail service lists and resending documents;

(18) October 8, 2009: Lewis billed .20 hours ($29.00) for filing an order regarding a motion to stay;

(19) October 15, 2009: Lewis billed 1.20 hours ($174.00) for following up on an order for expedited transcripts and processing of the filing fees related to the filing of pro hac vice motions;

(20) October 16, 2009: Lewis billed .50 hours ($72.50) for following up on an expedited transcript request and coordinating delivery of an audio recording of an unspecified hearing to a court reporter;

(21) December 3, 2009: Lewis billed 1.40 hours ($203.00) for preparing a "notebook for confirmation hearing" and,

(22) December 10, 2009: Lewis billed .50 hours ($72.50) for working[11] on a "notebook for confirmation hearing."

(DE 72, exh. 2, pgs. 14, 24, 25, 39, 40, 41, 42, 49, 52, 53; DE 72, exh. 3, pgs. 4, 7, 8, 9, 10, 11,

---

[11]  Defendant's invoice fails to specify what work was performed by Lewis, (DE 72, exh. 3, pg. 19), as required by *Barnes*, 168 F.3d at 427.

12, 13, 15, 16, 18, 19).

The amount billed by Defendant's paralegals and cite checkers on the foregoing clerical tasks amounts to two thousand, five hundred sixty-four dollars and fifty cents ($2,564.50). Because time spent on clerical tasks is not compensable, this Court **RECOMMENDS** that the District Court deduct such amount from Defendant's award.

*See Jean*, 863 F.2d at 778-780; *Celeste*, 988 F.2d at 1071 and n.3; *Munoz*, 2010 WL 2243795 at *7 (noting that where a paralegal performs work that would not be performed by an attorney, such work is not compensable as attorney's fees; declining request for time spent formatting and e-mailing proposed orders to chambers) (*citing Jean*, 863 F.2d at 778); *Fox*, 2010 WL 1010871 at *7 (noting that secretarial work such as "gathering materials and copying, mailing, [and] refiling," as well as "organizing files, copying documents, checking the docket, updating files, checking court dates and delivering papers" is not compensable) (*quotations omitted*); *Adams*, 2009 WL 3261955 at *3 (noting that work performed by clerical staff should not be compensated because such costs constitute overhead) (*citations omitted*).

### 2. Hourly Rates-Paralegals

Turning now to the hourly rates claimed for the paralegals and cite checkers, after considering the *Johnson* factors, this Court concludes that Defendant has failed to show that any of the claimed paralegal rates are reasonable.

As to the ninth *Johnson* factor, the experience, reputation, and ability of the paralegals, Defendant's motion shows that Evans, a cite checker, has been employed by the firm since 2005, graduated from George Mason University in 1988, and received a certificate in paralegal studies in 2005. (DE 72, pg. 5). However, Defendant has provided little information with regard to

22

Beaty, Yeager, and Lewis. Although Defendant states that Beaty joined the firm of Williams &
Connolly LLP in 2006 after graduating from the University of Maryland, and that she is a
paralegal, Defendant does not indicate whether she has been employed solely as a paralegal, or
how long she has been a paralegal. (DE 72, pg. 5). Similarly, although Defendant states that
Yeager, a cite checker, has been employed by the firm of Williams & Connolly since 2006,
Defendant provides no other information. (DE 72, pg. 6). Finally, with regard to Lewis,
Defendant only states that she has been a paralegal with the firm of Bass Berry & Sims PLC for
an undisclosed period of time. (DE 72, pg. 7).

 Defendant has provided no other information that pertains to any of the other *Johnson*
factors.

 Notwithstanding the lack of additional information to support the fees requested by these
paralegals, the Court finds that the rates sought are within the range typically charged by large
law firms in this District and, therefore, are reasonable. As previously stated, the Court declines
to apply rates customarily charged in Washington, D.C. and Nashville and will only consider the
reasonableness of the rates charged as compared to similar law firms located in this District.
Given that Williams & Connolly and Bass, Berry & Sims are both large law firms with well over
200 attorneys, it is proper for this Court to consider rates charged by similarly sized firms in the
local area. Recent case law from this District suggests that the hourly rates charged by the four
paralegals in this case (ranging between $145.00 - $184.50) are reasonable. *See Parrot, Inc. v.
Nicestuff Distributing Intern., Inc.*, 2010 WL 680948, *8 (S.D. Fla. Feb. 24, 2010)(court awarded
an hourly rate of $190.00 to paralegals at a large firm)(*citing Global Finance, LLC v. Pay Pro
Card Corp.*, 2008 WL 4663900, *2-3 (M.D. Fla. Oct.20, 2008)(court awarded hourly rates of

23

$170.00 - $190.00 to paralegals at large international firm).

Based on the foregoing, this Court **RECOMMENDS** that the District Court grant the hourly paralegal rates as requested.

### 3. Reasonable Number of Hours-Paralegals

Turning now to the reasonable number of hours billed by the paralegals, this Court notes that at pages 19-21 of the instant Report and Recommendation, this Court has recommended that the District Court deduct fees for all entries describing clerical tasks. Now this Court must determine the reasonable number of hours for which Defendant should be compensated.

Defendant claims the following total number hours for paralegals:

Beaty: 11 hours

Yeager: 5.5 hours

Evans: 7 hours

Lewis: 23.1 hours

(DE 72, pgs. 5, 7). Considering the clerical entries described *infra*, at pages 19-21, and deducting those hours, this Court concludes that the paralegals should be compensated for the following reasonable number of hours:

Beaty: 11 claimed hours - 5.4 hours = 5.6 total hours

Yeager: 5.5 claimed hours - 0 hours = 5.5 total hours

Evans: 7 claimed hours - 0 hours = 7 total hours

Lewis: 23.1 claimed hours - 6.8 hours = 16.3 total hours

Having determined the reasonable hourly rates and reasonable number of hours for all individuals who billed time herein, this Court now turns to the calculation of Defendant's award

24

of attorney's fees.

**Calculation of Total Recommended Award**

Daniel F. Katz: 23.8 compensable hours x $500.00 per hour = $11,900.00

Paul T. Hourihan: 178 compensable hours x $400.00 per hour = $71,200.00

Beth A. Levene: 258.8 compensable hours x $400.00 per hour = $103,520.00

C. Bryan Wilson: 131.7 compensable hours x $300.00  per hour = $39,510.00

Marcus Smith: 174.8 compensable hours x $224.00 per hour = $39,155.20

Paul Jennings: 211.1 compensable hours x $405.00 per hour = $85,495.50

Gene Humphreys: 129.3 compensable hours x $385.00 per hour = $49,780.50

Scott P. Tift: 39.4 compensable hours x $180.00 per hour = $7,092.00

Joanne O'Connor: 13.7 compensable hours x $300.00 per hour = $4,110.00

Alissa C. Beaty: 5.6 compensable hours x $148.75 per hour = $ 833.00

Natalie L. Yeager: 5.5 compensable hours x $184.50 per hour = $ 1,014.75

Olivia J. Evans: 7 compensable hours x $174.25 per hour = $1,219.75

LeAnn Lewis: 16.3 compensable hours x $145.00 per hour =$ 2,363.50

**Total Attorney's Fees Award: $417,194.20**

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Daniel T. K. Hurley, Senior United States District Court Judge for the Southern District of Florida, within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) (2010) (providing that "within fourteen days

25

after being served with a copy, any party may serve and file written objections to such proposed

findings and recommendations as provided by rules of court."). *See also* Fed. R. Civ. P. 72(b)

(2010) ("Within 14 days after being served with a copy of the recommended disposition, a party

may serve and file specific written objections to the proposed findings and recommendations. A

party may respond to another party's objections within 14 days after being served with a copy.")

Failure to timely file objections shall bar the parties from attacking on appeal the factual findings

contained herein. *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S.

958 (1988); *RTC v. Hallmark Builders, Inc*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in Chambers this _11th__ day of April, 2011, at West Palm

Beach in the Southern District of Florida.

_James M. Hopkins_

_____

JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to:
The Hon. Daniel T. K. Hurley, Senior United States District Court Judge for the Southern
District of Florida
Counsel of Record